MAYER | BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
United States of America

T: +1 312 782 0600
F: +1 312 701 7711
mayerbrown.com

**Joshua Yount**
T: +1 312 701 8423
F: +1 312 706 8521
JDYount@mayerbrown.com

June 22, 2026

BY ECF

Molly Dwyer
Clerk of Court
U.S. Court of Appeals for the Ninth Circuit
95 Seventh Street
San Francisco, CA 94103

Re: Rule 28(j) Supplemental Authority in *Klawonn v. Board of Directors for the Motion Picture Industry Pension Plans*, Nos. 25-2874 and 25-3230

Dear Ms. Dwyer:

Defendants-Appellees in the above-noted appeals submit the attached supplemental authority relevant to the argument on pages 45-46 of their October 15, 2025 Second Brief that Plaintiff bore the burden of proving causation: the Brief for the United States as *Amicus Curiae* in *Pizarro v. Home Depot, Inc.*, No. 24-620 (U.S. Dec. 9, 2025) ("SG Brief").[1]

Repudiating prior government briefs on the subject, the SG Brief—which the Solicitor General and the Solicitor of Labor signed—takes the position that "the relevant authorities are better understood as leaving the burden of proving causation on ERISA plaintiffs." SG Br. 3.

The SG Brief explains that nothing in ERISA's text displaces the "ordinary default rule" placing on plaintiffs the burden of persuasion regarding essential elements of their claims, including causation. SG Br. 7-8. The SG Brief then rejects the idea that the common law of trusts overcomes the default rule, detailing how the relevant authorities "disclose no trust-law consensus on shifting the burden of proving causation to defendants." *Id.* at 2; *see id.* at 8-16.

The SG Brief further describes why the "justifications for burden shifting are incompatible with ERISA's reticulated scheme and objectives." *Id.* at 15. "Congress addressed" information-asymmetry concerns through ERISA disclosure requirements. *Id.* And burden shifting "could make it all too easy for plaintiffs to survive motions practice and press weak claims to trial or settlement," as plaintiffs could shift the burden merely by "pairing" some underperformance "with some procedural foot-fault in the plan's management." *Id.* at 16.

---

[1] After the SG Brief urged review in *Pizarro*, the parties sought and obtained dismissal of the certiorari petition.

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities including Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England & Wales), Mayer Brown Hong Kong LLP (a Hong Kong limited liability partnership) and Tauil & Chequer Advogados (a Brazilian law partnership).

The SG Brief and its position that ERISA plaintiffs bear the burden of proving causation provides further support for Defendants' arguments that Plaintiff had to, but did not, come forward with evidence that Defendants' purported imprudence caused the alleged harm. *See* Second Br. 45-63.

Sincerely,

/s/ Joshua D. Yount

cc: CM/ECF-registered participants

No. 24-620

# In the Supreme Court of the United States

JAIME H. PIZARRO, ET AL., PETITIONERS

*v.*

THE HOME DEPOT, INC., ET AL.

*ON PETITION FOR A WRIT OF CERTIORARI*
*TO THE UNITED STATES COURT OF APPEALS*
*FOR THE ELEVENTH CIRCUIT*

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE**

D. JOHN SAUER
*Solicitor General*
*Counsel of Record*
CURTIS E. GANNON
*Deputy Solicitor General*
AARON Z. ROPER
*Assistant to the Solicitor General*
*Department of Justice*
*Washington, D.C. 20530-0001*
*SupremeCtBriefs@usdoj.gov*
*(202) 514-2217*

JONATHAN BERRY
*Solicitor of Labor*
WAYNE R. BERRY
*Associate Solicitor*
GARRETT N. TRAUB
SARAH M. KARCHUNAS
*Attorneys*
*Department of Labor*
*Washington, D.C. 20210*

## QUESTION PRESENTED

Under the Employee Retirement Income Security Act of 1974, 29 U.S.C. 1001 *et seq.*, a fiduciary who breaches a statutory fiduciary duty "shall be personally liable to make good to [the] plan any losses to the plan resulting from each such breach." 29 U.S.C. 1109(a). The question presented is:

Whether a plaintiff alleging a breach of fiduciary duty under 29 U.S.C. 1109(a) bears the burden to prove that the alleged breach caused a loss to the plan.

## TABLE OF CONTENTS

Page

Interest of the United States ........................................ 1
Introduction ........................................ 1
Statement ........................................ 3
Discussion ........................................ 7
A. ERISA plaintiffs bear the burden of proving causation of losses to the plan ........................................ 7
B. The question presented warrants review in this case ........................................ 17
Conclusion ........................................ 22

## TABLE OF AUTHORITIES

Cases:

*Adriance's Estate, In re*, 260 N.Y.S. 173 (Sur. Ct. 1932) ........................................ 10
*Beebe's Estate, In re*, 52 N.Y.S.2d 736 (Sur. Ct. 1943) ....... 10
*Blankenship* v. *Boyle*, 329 F. Supp. 1089 (D.D.C. 1971) ........................................ 12
*Branch* v. *White*, 239 A.2d 665 (N.J. Super. Ct. App. Div. 1968) ........................................ 12
*Bull* v. *United States*, 295 U.S. 247 (1935) ........................................ 8
*Concrete Pipe & Prods. of Cal., Inc.* v. *Construction Laborers Pension Trust*, 508 U.S. 602 (1993) ........................................ 19
*Conkright* v. *Frommert*, 559 U.S. 506 (2010) ......... 2, 9, 12, 16
*Cunningham* v. *Cornell Univ.*, 604 U.S. 693 (2025) ........................................ 8, 9, 16, 17
*Director, Office of Workers' Comp. Programs* v. *Greenwich Collieries*, 512 U.S. 267 (1994) ........................................ 19
*Estate of Maurice, In re*, 249 A.2d 334 (Pa. 1969) .............. 12
*Estate of Stetson*, 345 A.2d 679 (Pa. 1975) ........................................ 13
*Field* v. *Mans*, 516 U.S. 59 (1995) ........................................ 13

Cases—Continued: Page

*Firestone Tire & Rubber Co.* v. *Bruch*, 489 U.S. 101 (1989) ........9, 13
*Fulton Nat'l Bank* v. *Tate*, 363 F.2d 562 (5th Cir. 1966) ........12
*Grunhut's Will, In re*, 277 N.Y.S. 454 (Sur. Ct. 1935)........10
*Harris Trust & Sav. Bank* v. *Salomon Smith Barney Inc.*, 530 U.S. 238 (2000) ........10, 14
*Hughes* v. *Northwestern Univ.*, 595 U.S. 170 (2022)........21
*Hughes Aircraft Co.* v. *Jacobson*, 525 U.S. 432 (1999)........15
*Lane Title & Trust Co.* v. *Brannan*, 440 P.2d 105 (Ariz. 1968)........11
*Lavine* v. *Milne*, 424 U.S. 577 (1976)........19
*Martin* v. *Feilin*, 965 F.2d 660 (8th Cir. 1992), cert. denied, 506 U.S. 1054 (1993)........18
*Meacham* v. *Knolls Atomic Power Lab.*, 554 U.S. 84 (2008) ........19, 20
*Medtronic, Inc.* v. *Mirowski Family Ventures, LLC*, 571 U.S. 191 (2014) ........19
*Pepper* v. *Litton*, 308 U.S. 295 (1939) ........11, 12
*Pioneer Centres Holding Co. Emp. Stock Ownership Plan & Trust* v. *Alerus Fin., N.A.*:
858 F.3d 1324 (10th Cir. 2017), petition for cert. dismissed, 585 U.S. 1056 (2018)........18
583 U.S. 1178 (2018)........18
*Putnam Invs., LLC* v. *Brotherston*, 587 U.S. 959 (2019) ........18
*RJR Pension Inv. Comm.* v. *Tatum*, 575 U.S. 902 (2015) ........18, 19
*Sacerdote* v. *New York Univ.*, 9 F.4th 95 (2d Cir. 2021) ........17
*Schaffer ex rel. Schaffer* v. *Weast*, 546 U.S. 49 (2005) ........2, 6, 8, 15, 18, 19

Cases—Continued: Page

*Silverman* v. *Mutual Ben. Life Ins. Co.*,
138 F.3d 98 (2d Cir.), cert. denied,
525 U.S. 876 (1998) ....17

*Standard Ins. Co.* v. *Guy*,
115 F.4th 518 (6th Cir. 2024) ....13

*Streight* v. *First Trust Co.*,
275 N.W. 278 (Neb. 1937) ....10

*Tatum* v. *RJR Pension Inv. Comm.*,
761 F.3d 346 (4th Cir. 2014), cert. denied,
576 U.S. 1054 (2015) ....21

*Tibble* v. *Edison Int'l*, 575 U.S. 523 (2015) ....8, 9, 14

*United States Life Ins. Co.* v. *Mechanics & Farmers Bank*, 685 F.2d 887 (4th Cir. 1982) ....14

*Varity Corp.* v. *Howe*, 516 U.S. 489 (1996) ....9

*Whitfield* v. *Lindemann*, 853 F.2d 1298
(5th Cir. 1988), cert. denied, 490 U.S. 1089 (1989) ....14, 18

*Wisconsin Cent. Ltd.* v. *United States*,
585 U.S. 274 (2018) ....13

*Ziegler's Estate, In re*,
18 N.Y.S.2d 24 (App. Div. 1940) ....12

Statutes:

Employee Retirement Income Security Act of 1974,
29 U.S.C. 1001 *et seq.* ....1

29 U.S.C. 1001(b) ....3, 16

29 U.S.C. 1021 *et seq.* ....15

29 U.S.C. 1104(a)(1) ....3

29 U.S.C. 1104(a)(1)(B) ....3

29 U.S.C. 1109(a) ....1, 3, 7, 9

29 U.S.C. 1132(a)(2) ....3, 15

29 U.S.C. 1132(a)(5) ....15

29 U.S.C. 1134 ....15

Miscellaneous:

George Gleason Bogert et al., *Bogert's The Law of Trusts and Trustees* (Westlaw May 2025 Update) .......... 14

George Gleason Bogert & George Taylor Bogert, *The Law of Trusts and Trustees* (2d ed. 1962) ................. 10

Chubb, *Excessive Litigation Over Excessive Plan Fees in 2023* (Apr. 2023) ............................................ 17

Edward W. Cleary, *McCormick's Handbook of the Law of Evidence* (2d ed. 1972) ............................. 8, 16

Russell D. Niles, *A Contemporary View of Liability for Breach of Trust* (1974) .................................................. 12

Restatement (Second) of Trusts (1959) ............................... 11

Restatement (Third) of Trusts (2012) .................................. 14

3 Austin Wakeman Scott, *The Law of Trusts* (3d ed. 1967) ................................................................. 11, 12

# In the Supreme Court of the United States

No. 24-620

JAIME H. PIZARRO, ET AL., PETITIONERS

*v.*

THE HOME DEPOT, INC., ET AL.

*ON PETITION FOR A WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT*

## BRIEF FOR THE UNITED STATES AS AMICUS CURIAE

### INTEREST OF THE UNITED STATES

This brief is submitted in response to the Court's order inviting the Solicitor General to express the views of the United States. In the view of the United States, the petition for a writ of certiorari should be granted.

### INTRODUCTION

Under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. 1001 *et seq.*, a fiduciary who breaches his duties is personally liable for "any losses to the plan resulting from each such breach." 29 U.S.C. 1109(a). As the decision below acknowledged, the courts of appeals are divided over who bears the burden of proving that losses were caused by a breach. Two circuits, including the Eleventh Circuit in the decision below, place the burden on plaintiffs, just as they must prove other elements of their claims. But five circuits import asserted trust-law principles under which

plaintiffs must prove a breach and a loss, but the burden then shifts to defendants to prove that the breach did *not* cause the loss. In the view of the United States, that recurrent conflict warrants this Court's resolution, and this case would be a suitable vehicle.

The decision below is correct. Where, as here, a statute does not explicitly impose a burden of proof, "the ordinary default rule" is that plaintiffs bear the burden to prove every element of their claims. *Schaffer ex rel. Schaffer* v. *Weast*, 546 U.S. 49, 56 (2005). Petitioners derive a contrary burden-shifting rule from trust law, which they claim ERISA implicitly incorporates. Trust law can play an important role in informing ERISA's trust-inspired concepts. But this case principally involves a question of civil procedure, not trust law. And this Court does not incorporate trust law into ERISA where the "state of trust law" is "unclear." *Conkright* v. *Frommert*, 559 U.S. 506, 516 (2010). Here, the relevant authorities—both at the time of ERISA's enactment in 1974 and today—disclose no trust-law consensus on shifting the burden of proving causation to defendants. Accordingly, the ordinary default rule governs, and the court of appeals correctly required petitioners, as plaintiffs, to prove causation.

In briefs submitted in response to previous invitations from this Court, the United States took the position that ERISA fiduciaries bear the burden of disproving causation. U.S. Amicus Br. at 7-12, *Putnam Invs., LLC* v. *Brotherston*, 587 U.S. 959 (2019) (No. 18-926); U.S. Amicus Br. at 8-11, *RJR Pension Inv. Comm.* v. *Tatum*, 575 U.S. 902 (2015) (No. 14-656). The Secretary of Labor has taken the same position in the lower courts, including in an amicus brief in the court of appeals in this case. See p. 18 n.3, *infra*. Following the

change in Administration and this Court's invitation, the government has reviewed its position and concluded that the relevant authorities are better understood as leaving the burden of proving causation on ERISA plaintiffs.

## STATEMENT

1. ERISA protects "the interests of participants in employee benefit plans and their beneficiaries," 29 U.S.C. 1001(b), by imposing duties of loyalty, prudence, and diligence on plan fiduciaries, 29 U.S.C. 1104(a)(1). A fiduciary must discharge those duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. 1104(a)(1)(B). If the fiduciary fails to do so, a plan participant, beneficiary, fiduciary, or the Secretary of Labor may sue to remedy the breach. 29 U.S.C. 1132(a)(2). A breaching fiduciary is "personally liable to make good to such plan any losses to the plan resulting from each such breach." 29 U.S.C. 1109(a).

2. This case involves alleged breaches of the duty of prudence in Home Depot's 401(k) plan—one of the largest plans in America with over $9 billion in assets as of 2019. Pet. App. 4a, 6a-7a. Respondent The Home Depot, Inc., appointed respondents the Investment Committee and the Administrative Committee to manage the plan as ERISA fiduciaries. *Id.* at 4a, 33a-34a.

Respondents hired financial advisors to provide investment advice to plan participants, selecting "the most popular service provider for 401(k) plans of similar size and complexity." Pet. App. 20a; see *id.* at 5a. The advisors charged tiered fees to participants who opted to have the advisors actively manage their accounts. *Id.* at 5a, 19a. Respondents "negotiated and secured sev-

eral decreases" in fees over the years. *Id.* at 19a. But some of the advisors' smaller competitors charged lower fees. *Id.* at 19a, 21a. And the advisors' fees for Home Depot plan participants exceeded the fees they charged some other customers in some years by some metrics. *Id.* at 21a-22a. Most metrics, however, suggested that the plan's fees were below average. *Id.* at 22a.

Respondents offered plan participants a curated menu of funds in which to invest. Pet. App. 5a-6a. At issue here are the BlackRock target date funds, the JPMorgan Stable Value Fund, the TS&W Fund of small-capitalization companies, and the Stephens Fund of small-capitalization companies. *Id.* at 6a. The BlackRock funds included "popular options" among "plans of comparable size and complexity" that "consistently received positive ratings from industry analysts." *Id.* at 24a. The JPMorgan Fund "consistently delivered positive returns during the Class Period." *Id.* at 50a. And the TS&W Fund "significantly outperformed" its benchmarks and "ranked among the very top funds in its peer group" in some periods. *Id.* at 26a. But using other comparators and timeframes, the challenged funds all underperformed at some point between 2010 and 2015. *Id.* at 49a, 53a, 56a-57a, 94a, 103a, 108a.

3. In April 2018, petitioners—current and former Home Depot employees who participated in the plan—filed this class action against respondents in the United States District Court for the Northern District of Georgia. Pet. App. 33a, 58a. Petitioners allege that respondents breached their fiduciary duty of prudence by (1) failing to monitor adequately the advisors' fees, and (2) failing to monitor adequately and remove the challenged funds. *Id.* at 7a. The district court certified a class of plan participants who used the plan's advisors

or invested in the challenged funds after April 12, 2012. *Ibid.*

Following discovery, the parties cross-moved for summary judgment, which the district court granted to respondents. Pet. App. 30a-116a. The parties disputed who bore the burden of proving loss causation. *Id.* at 66a. The court held that circuit precedent puts that burden on petitioners, as plaintiffs. *Id.* at 66a-68a.

The district court determined that petitioners could not carry that burden. Pet. App. 70a-116a. On the claim that respondents permitted excessive advisory fees, the court found a genuine dispute of material fact as to whether respondents breached their duty of prudence. *Id.* at 74a-76a. But, the court held, petitioners could not show that the alleged "breach proximately caused a loss to the Plan." *Id.* at 76a; see *id.* at 76a-83a.

The district court found genuine disputes of material fact as to whether respondents acted prudently in monitoring and retaining three of the four funds that petitioners challenge. Pet. App. 87a, 104a, 109a.[1] But the court held that those claims fail because petitioners have "failed to marshal evidence of loss causation." *Id.* at 99a; see *id.* at 106a, 112a, 115a. Instead, it said petitioners have engaged in "classic cherry-picking"—identifying short periods where the funds underperformed benchmarks that offer an "'apples and oranges' comparison." *Id.* at 99a, 112a.

4. The court of appeals affirmed. Pet. App. 1a-29a. The court held that ERISA plaintiffs bear the burden of proving that a breach of fiduciary duty caused the

---

[1] The district court found no genuine dispute that respondents prudently monitored the Stephens Fund. Pet. App. 113a. That holding, which petitioners do not challenge here, forecloses their claim as to that fund. Pet. 7 n.4, 29 n.10.

plan's loss. *Id.* at 10a-15a. As the court recognized, "the 'ordinary default rule' is 'that plaintiffs bear the burden of persuasion regarding the essential aspects of their claims.'" *Id.* at 12a (quoting *Schaffer ex rel. Schaffer* v. *Weast*, 546 U.S. 49, 56-57 (2005)). That rule applies here, the court held, because there is no evidence that Congress intended to "turn the usual principles of civil liability on their head" and require "a defendant to *disprove* causation." *Ibid.* Causation is not an "affirmative defense" but "an element of the plaintiff's claim" that the plaintiff must plead and prove. *Id.* at 13a.

The court of appeals acknowledged that "at least some authorities" describe trust law as requiring defendants to disprove causation. Pet. App. 14a. But the court found no textual indication that Congress intended to incorporate such a rule into ERISA. *Id.* at 15a. Petitioners justified burden shifting given "the informational advantages of trustees over beneficiaries." *Ibid.* But that rationale "does not cleanly apply to ERISA" since ERISA's mandatory-disclosure scheme shrinks any "information imbalance." *Ibid.*

The court of appeals further held that, to meet their burden, "plaintiffs must show that the investments made were not objectively prudent." Pet. App. 16a. The parties disputed whether ERISA requires "that a hypothetical prudent fiduciary 'would have'" or "'could have'" made the same decision. *Id.* at 17a. The court declined to resolve that debate because, if plaintiffs bear the burden, the two standards largely collapse. *Id.* at 17a-18a. That "a hypothetical prudent fiduciary 'could not have' made the same choice" necessarily shows that "a hypothetical prudent fiduciary 'would not have' made the same choice, and vice versa." *Id.* at 18a. The court stated that the two standards make "a real

difference" if *defendants* bear the burden and, in dicta, signaled its view that the "could have" formulation is correct. *Id.* at 17a & n.4.

The court of appeals held that petitioners have not created a "triable issue of fact on the objective prudence of the fees," which were by "no means an outlier" even under petitioners' preferred metrics. Pet. App. 22a. Similarly, as to the challenged funds, petitioners identified only "[a] few here-and-there years of below-median returns," which is "not a meaningful way to evaluate a plan's success as a long-term investment vehicle." *Id.* at 23a. Petitioners therefore failed to carry their burden on causation. *Id.* at 19a.

## DISCUSSION

The court of appeals correctly held that, like plaintiffs generally, ERISA plaintiffs alleging a breach of fiduciary duty must prove causation of the plan's losses, just as they must prove other elements of their claim. But as acknowledged by the decision below (Pet. App. 12a n.2) and respondents (Br. in Opp. 2, 31, 33), several courts of appeals have reached the opposite conclusion, relying on asserted trust-law principles to shift the burden to defendants of *disproving* causation. The Court should grant review to resolve that conflict.

### A. ERISA Plaintiffs Bear The Burden Of Proving Causation Of Losses To The Plan

1. ERISA imposes damages liability on fiduciaries for "losses to the plan resulting from each * * * breach." 29 U.S.C. 1109(a). As both sides agree (Pet. 2; Br. in Opp. 1, 16), ERISA's text requires that losses "result[] from," *i.e.*, are caused by, a breach, but it does not prescribe who bears the burden of proving causation.

This Court's decisions, however, supply an "ordinary default rule": "[P]laintiffs bear the burden of persuasion regarding the essential aspects of their claims." *Schaffer ex rel. Schaffer* v. *Weast*, 546 U.S. 49, 57 (2005); see *Bull* v. *United States*, 295 U.S. 247, 260 (1935) (noting that "the burden of proof" is "normally on the claimant"). That rule reflects the fact that it is "the plaintiff who generally seeks to change the present state of affairs" and "therefore naturally should be expected to bear the risk of failure of proof or persuasion." Edward W. Cleary, *McCormick's Handbook of the Law of Evidence* § 337, at 786 (2d ed. 1972) (McCormick).

The default rule, "of course, admits of exceptions." *Schaffer*, 546 U.S. at 57. Defendants, for example, generally bear the burden of proving affirmative defenses. *Cunningham* v. *Cornell Univ.*, 604 U.S. 693, 702 (2025). But the default rule is a default precisely because it governs "[a]bsent some reason to believe that Congress intended otherwise." *Schaffer*, 546 U.S. at 57.

2. Petitioners cannot overcome the default rule. Petitioners invoke (Pet. 20-27) the common law of trusts, which they understand as shifting the burden to defendants of disproving causation once plaintiffs have established a breach and loss. But the trust-law authorities are not as clear as petitioners suggest (or as the government has suggested in its previous briefs in this Court and the lower courts). ERISA's adoption of a causation requirement should not be understood to have implicitly incorporated one side of a trust-law debate about the associated burden of proof.

a. Petitioners are correct that trust law can play an important role in interpreting ERISA. ERISA's fiduciary duties are "derived from the common law of trusts." *Tibble* v. *Edison Int'l*, 575 U.S. 523, 528 (2015) (citation

omitted). Accordingly, "[i]n determining the contours of an ERISA fiduciary's duty, courts often must look to the law of trusts." *Id.* at 528-529.

But trust law does not always "tell the entire story." *Varity Corp.* v. *Howe*, 516 U.S. 489, 497 (1996). This case, moreover, involves not the "contours of an ERISA fiduciary's" trust-inspired duties, *Tibble*, 575 U.S. at 528-529, but a mine-run question of civil procedure and evidence: Who bears the burden of proving one element of the plaintiff's claim? Last Term in *Cunningham*, this Court faced a similar question of "who bear[s] the burden of pleading and proving" an exemption under a different section of ERISA. 604 U.S. at 696. To answer that question, the Court applied the "general rule of statutory construction" that defendants bear the burden to prove exemptions, which take the form of "affirmative defenses." *Id.* at 701 (brackets and citations omitted). While the Court noted that trust-law principles "would have been consistent with the Court's holding," *id.* at 702 n.4, it did "not rely on the common law of trusts," *id.* at 709 n.1 (Alito, J., concurring). Here, however, petitioners do not dispute that ERISA creates liability only when "losses to the plan *result*[] *from*" the fiduciary's breach, 29 U.S.C. 1109(a) (emphasis added), and that requirement is not phrased as a separate exemption from a general principle of liability.

b. Even where trust law would otherwise be relevant, courts will not incorporate trust-law principles into ERISA when the "state of trust law" is "unclear." *Conkright* v. *Frommert*, 559 U.S. 506, 516 (2010). Instead, this Court has typically looked for "settled principles of trust law" to inform ERISA's meaning. *Firestone Tire & Rubber Co.* v. *Bruch*, 489 U.S. 101, 112

(1989); accord *Harris Trust & Sav. Bank* v. *Salomon Smith Barney Inc.*, 530 U.S. 238, 250 (2000).

Petitioners have not identified any settled trust-law practice of shifting the burden of proving causation to defendants. Before ERISA's enactment in 1974, some authorities had even expressly imposed that burden on *plaintiffs*. As one leading treatise explained: If "[a] beneficiary seeking to obtain relief for a breach of trust * * * seeks damages, a part of his burden will be proof that the breach caused him injury." George Gleason Bogert & George Taylor Bogert, *The Law of Trusts and Trustees* § 871, at 89 (2d ed. 1962). While the defendant has the burden of "contradicting" the plaintiff's "prima facie case," the treatise treated causation as part of the plaintiff's prima facie case. *Id.* § 871, at 89-90; accord *id.* § 701, at 405 ("The cestui [*i.e.*, the beneficiary] must bear the burden of proving that the act or omission of the trustee has caused a diminution of the trust income or capital.").

To the New York Surrogate's Court, "the burden of proof" with respect to causation was similarly "obvious." *In re Adriance's Estate*, 260 N.Y.S. 173, 180 (1932). "[T]he objecting parties had the burden of demonstrating that any losses of assets by the trustee are attributable to his act or neglect," *i.e.*, that the breach "was the active proximate cause of the loss." *Ibid.*; accord *In re Beebe's Estate*, 52 N.Y.S.2d 736, 741-742 (Sur. Ct. 1943); *In re Grunhut's Will*, 277 N.Y.S. 454, 456 (Sur. Ct. 1935). Similarly, the Nebraska Supreme Court observed that "before recovery can be had, it must be shown that damage resulted from the" breach, *i.e.*, "proof must be adduced" by the plaintiff that the breach "caused [her] to be damaged." *Streight* v. *First Trust Co.*, 275 N.W. 278, 287 (1937). And the Arizona Supreme

Court affirmed a jury instruction that "could only have been understood by the jury as imposing the burden of causation on the beneficiaries." *Lane Title & Trust Co.* v. *Brannan*, 440 P.2d 105, 112 (1968).

Other key authorities were, before ERISA's enactment, conspicuously silent on the burden of proof. One influential treatise noted a recurring "difficulty" over whether to impose liability when there is no "causal connection between the breach of trust and the loss." 3 Austin Wakeman Scott, *The Law of Trusts* § 205.1, at 1669 (3d ed. 1967) (Scott). But that treatise did not address the burden of proof. See *id.* § 205.1, at 1669-1673. Likewise, the 1959 Second Restatement recognized that "the trustee may not be chargeable with the amount of the loss if it would have occurred in the absence of a breach of trust." Restatement (Second) of Trusts § 205 cmt. f, at 460 (1959) (Second Restatement). But that section too failed to address the burden of proof.

Petitioners contend (Cert. Reply Br. 11) that the Second Restatement elsewhere "embraced" burden shifting. But the provision they cite was expressly limited to a trustee who violated "more than one" duty. Second Restatement §§ 212, 212(4), at 483-484. The Second Restatement's general section on "liability in case of breach of trust" offers no support for petitioners' rule. *Id.* § 205, at 458 (capitalization altered). That mix of silence and contrary authority dooms petitioners' assertion (Pet. 23) that there was a "well-established" burden-shifting rule in 1974 that Congress incorporated in ERISA's loss-causation requirement.

c. As petitioners implicitly recognize, many of their authorities addressed different burden-shifting questions. Cert. Reply Br. 10 n.7; see Pet. 23; Cert. Reply Br. 10 (collecting cases). *Pepper* v. *Litton*, 308 U.S. 295

(1939), for example, held that fiduciaries charged with a conflict of interest had the burden to prove the challenged transaction's "good faith" and "inherent fairness." *Id.* at 306; accord *Fulton Nat'l Bank* v. *Tate*, 363 F.2d 562, 564 (5th Cir. 1966) (holding that fiduciary with "substantial conflict of interests" had burden to demonstrate that the transaction was "fair" and that "he received no personal profit"). In other cases, courts put the burden on trustees to "justify[]" apparently egregious breaches of fiduciary duty. *Blankenship* v. *Boyle*, 329 F. Supp. 1089, 1096 (D.D.C. 1971); accord *In re Estate of Maurice*, 249 A.2d 334, 336 (Pa. 1969) (requiring fiduciary "to prove due care" given "glaring error in overpayment of tax"). And in another case, the court put the burden on the trustee to show that there was "no loss" in the first place. *In re Ziegler's Estate*, 18 N.Y.S.2d 24, 25-26 (App. Div. 1940). Those authorities do "not resolve the specific issue before" the Court and are thus of little help. *Conkright*, 559 U.S. at 516. In our estimation, petitioners' only pre-ERISA source that supports shifting the burden on causation is dicta in a decision of New Jersey's intermediate appellate court, *Branch* v. *White*, 239 A.2d 665, 674 (1968).

That sparsity is unsurprising, given petitioners' acknowledgement that many early cases required no "causal connection" at all. Cert. Reply Br. 10 (quoting Scott § 205.1, at 1673). When ERISA was enacted, causation in trust-law cases was in flux. Many courts that had historically not required causation were moving toward such a requirement. See Russell D. Niles, *A Contemporary View of Liability for Breach of Trust* 18 (1974). But they had not yet grappled with the burden of proof. Thus, one of petitioners' authorities from the year after ERISA's enactment acknowledged that the

court had "not previously answered" the question and a lower court had come out the other way. *Estate of Stetson*, 345 A.2d 679, 690 (Pa. 1975) (cited at Cert. Reply Br. 2, 11). Such uncertainty does not evince a clear trust-law rule that Congress implicitly incorporated into ERISA when it affirmatively imposed a loss-causation requirement.

d. Given that gap in circa-1974 trust law, petitioners rely (Pet. 2, 23) on trust-law sources postdating ERISA's enactment. The relevance of those authorities is debatable. A statute's meaning is fixed "at the time Congress enacted the statute." *Wisconsin Cent. Ltd.* v. *United States*, 585 U.S. 274, 284 (2018) (citation omitted). In other statutes that use common-law terminology, this Court has applied "'the established meaning of the[] terms'" at the time of enactment under "the dominant consensus of common-law jurisdictions." *Field* v. *Mans*, 516 U.S. 59, 69-70 & n.9 (1995) (citation omitted).

This Court has stated that Congress intended courts "to develop a 'federal common law of rights and obligations under ERISA-regulated plans.'" *Firestone*, 489 U.S. at 110 (citation omitted). But that does not necessarily mean that courts should look to trust-law authorities as of today. Federal courts could base a federal common law of ERISA on established trust-law principles of which Congress was presumptively aware in 1974. *Firestone* itself took that approach by looking to "settled principles of trust law" in the 1959 Second Restatement. *Id.* at 112; see, *e.g.*, *Standard Ins. Co.* v. *Guy*, 115 F.4th 518, 525-527 (6th Cir. 2024) (adopting federal-common-law slayer rule for ERISA because the slayer rule "was already firmly entrenched in the common law when Congress enacted ERISA").

Petitioners note (Cert. Reply Br. 10) that this Court has sometimes cited modern authority in ERISA cases. But those citations are accompanied by citations of consistent pre-ERISA sources. *E.g.*, *Tibble*, 575 U.S. at 529-530; *Harris*, 530 U.S. at 250. The Court has not meaningfully grappled with the timing question or suggested that post-ERISA *changes* in trust law have altered ERISA's meaning.

Petitioners' post-ERISA authority is admittedly stronger than their pre-ERISA authority. *E.g.*, Restatement (Third) of Trusts § 100 cmt. f, at 69 (2012). But even 14 years after ERISA's enactment, the Fifth Circuit could observe that "[t]he authorities are not in accord with regard to the burden of proof on the issue of causal relation." *Whitfield* v. *Lindemann,* 853 F.2d 1298, 1304 (1988), cert. denied, 490 U.S. 1089 (1989). In 1982, the Fourth Circuit squarely rejected the "novel proposition that, whenever a breach of the obligation by a trustee has been proved, the burden shifts to the trustee to establish that any loss suffered by the beneficiaries of the trust was not proximately due to the default of the trustee." *United States Life Ins. Co.* v. *Mechanics & Farmers Bank*, 685 F.2d 887, 896 (1982). And one of petitioners' modern treatises still tracks the pre-ERISA edition in stating that, if a beneficiary "seeks damages, a part of his burden will be proof that the breach caused him a loss." George Gleason Bogert et al., *Bogert's The Law of Trusts and Trustees* § 871 (Westlaw May 2025 Update) (cited at Pet. 23; Cert. Reply Br. 10); see p. 10, *supra*. Accordingly, even post-ERISA authorities do not establish the kind of settled trust-law rule that petitioners would need to depart from the general default rule.

3. Regardless, this Court does not incorporate trust-law doctrines into ERISA that are "inconsistent with 'the language of the statute, its structure, or its purposes.'" *Hughes Aircraft Co.* v. *Jacobson*, 525 U.S. 432, 447 (1999) (quoting *Varity*, 516 U.S. at 497). Petitioners' justifications for burden shifting are incompatible with ERISA's reticulated scheme and objectives.

a. Petitioners contend (Pet. 26) that burden shifting is necessary to account for "informational asymmetries" between plan participants and fiduciaries. But as the court of appeals observed, ERISA already provides "a comprehensive scheme of mandatory disclosure and reporting" requirements that mitigate any disparities. Pet. App. 15a (citing 29 U.S.C. 1021 *et seq.*). And one potential plaintiff—the Secretary of Labor—has broad investigative authority to obtain information before bringing suit. 29 U.S.C. 1132(a)(2) and (5); 29 U.S.C. 1134. Because "Congress addressed" any informational disparity by requiring fiduciaries to "share information," any asymmetry does not justify burden shifting. *Schaffer*, 546 U.S. at 60.

Moreover, it is not clear that the parties have asymmetrical information. The causation inquiry, in petitioners' preferred formulation, asks whether a "hypothetical prudent fiduciary *would* have made the same decision[s] anyway." Pet. C.A. Br. 26 (citation omitted; brackets in original). But answering that inquiry does not depend on information peculiar to the fiduciary; it requires an "objective" approach, *id.* at 32 (citation omitted), which plaintiffs and defendants appear equally well equipped to address.

In any event, as a rationale for burden shifting, informational asymmetry "is far from being universal, and has many qualifications upon its application." *Schaffer*,

546 U.S. at 60 (citation omitted). "Very often one must plead and prove matters as to which his adversary has superior access to the proof." McCormick § 337, at 787. Any informational disparity does not justify discarding plaintiffs' ordinary burden, particularly given the lack of a clear trust-law rule.

b. Petitioners also assert (Pet. 26) that ERISA is meant to protect beneficiaries and should "disfavor[] fiduciaries who claim that their breaches did not cause loss." Petitioners are correct that one of ERISA's objectives is to "protect * * * the interests of participants in employee benefit plans." 29 U.S.C. 1001(b). But burden shifting would not further that end.

As this case illustrates, burden shifting could make it all too easy for plaintiffs to survive motions practice and press weak claims to trial or settlement. That "prospect of increased litigation costs" is antithetical to ERISA's interests in "efficiency" and "predictability." *Conkright*, 559 U.S. at 518.

Given the ups and downs of the market, it will be frequently possible to identify some plan asset that has underperformed some benchmark for some period. Under petitioners' rule, plaintiffs could shift the burden by pairing such a loss with some procedural foot-fault in the plan's management. Here, for example, petitioners created a dispute of material fact over respondents' prudence in retaining popular, low-cost mutual funds by noting that the plan's Investment Committee did not always have full attendance and allegedly moved too briskly through its meetings. Pet. App. 54a, 86a. Were that enough to survive motions practice, plan fiduciaries could face intense pressure to settle "plainly unmeritorious," but expensive-to-litigate suits, as Justice Alito has observed in another ERISA context. *Cunningham*,

604 U.S. at 711 (concurring opinion). The result would be "a windfall" for "the few plan participants named as plaintiffs and their attorneys" but harm to "other plan participants" who could have such costs "passed on." *Ibid.*

Between 2016 and 2022, excessive-fee suits under ERISA increased six-fold. See *Cunningham*, 604 U.S. at 711 (Alito, J., concurring) (citing Chubb, *Excessive Litigation Over Excessive Plan Fees in 2023* (Apr. 2023)). Besides raising plans' costs, mounting ERISA litigation can reduce investment choices—pushing plan fiduciaries to avoid innovation and switch to whatever fund has the best short-term performance. See Encore Fiduciary Amicus Br. at 23-24, *Parker-Hannifin Corp.* v. *Johnson*, No. 24-1030 (May 21, 2025). That result would disserve the plan participants whom ERISA ultimately seeks to protect.

### B. The Question Presented Warrants Review In This Case

1. The court of appeals acknowledged that its decision conflicted with decisions of the First, Fourth, Fifth, and Eighth Circuits, which all "shift the burden of proof on causation to the defendants." Pet. App. 12a n.2; accord Br. in Opp. 2, 31, 33 (acknowledging "circuit split"). The Second Circuit has also held that "the burden under ERISA shifts to the defendants to * * * show[] that the loss was not caused by the breach of fiduciary duty." *Sacerdote* v. *New York Univ.*, 9 F.4th 95, 113 (2021), cert. denied, 142 S. Ct. 1112 (2022); but see *Silverman* v. *Mutual Ben. Life Ins. Co.*, 138 F.3d 98, 104 (2d Cir.) (declining to shift burden where new fiduciary allegedly failed to remedy prior fiduciary's breach), cert. denied, 525 U.S. 876 (1998).

The Eleventh Circuit recognized that its previous precedent on this issue "offered little analysis." Pet. App. 10a. But in this case, the court thoroughly consid-

ered other circuits' views, aligned itself with the Tenth Circuit's rejection of burden shifting, and denied rehearing en banc. *Id.* at 12a & n.2, 124a; see *Pioneer Centres Holding Co. Emp. Stock Ownership Plan & Trust* v. *Alerus Fin., N.A.*, 858 F.3d 1324, 1336 (10th Cir. 2017), petition for cert. dismissed, 585 U.S. 1056 (2018). Absent this Court's intervention, the conflict is unlikely to resolve itself.

2. That conflict warrants this Court's review. The question presented recurs with some frequency, since the burden of proof is part of the basic framework for every breach-of-fiduciary-duty case in which causation is contested. This is the fourth case in which this Court has called for the United States' views on the question.[2] And the Secretary of Labor has been addressing it in the lower courts for over 35 years, including in this case.[3]

Respondents assert (Br. in Opp. 31-32) that the question presented "has little practical significance" because burden shifting "only matters when the evidence put forth by the plaintiff and the defendant is in equipoise." That misapprehends the scope of the question presented. The "'burden of proof'" encompasses "two distinct burdens." *Schaffer*, 546 U.S. at 56 (citation omitted). Respondents focus on the "'burden of persuasion,'" *i.e.*, "which party loses if the evidence is closely balanced." *Ibid.* (citation omitted). But the "'burden of

---

[2] See *Putnam Invs., LLC* v. *Brotherston*, 587 U.S. 959 (2019) (No. 18-926); *Pioneer Centres Holding Co. Stock Ownership Plan & Trust* v. *Alerus Fin., N.A.*, 583 U.S. 1178 (2018) (No. 17-667); *RJR Pension Inv. Comm.* v. *Tatum*, 575 U.S. 902 (2015) (No. 14-656).

[3] Gov't C.A. Amicus Br. 12-26; Gov't Amicus Br. at 11-20, *Tatum* v. *RJR Pension Inv. Comm.*, 761 F.3d 346 (4th Cir. 2014) (No. 13-1360); Gov't Amicus Br. at 8-19, *Silverman*, *supra* (No. 96-7795); *Martin* v. *Feilin*, 965 F.2d 660, 671 (8th Cir. 1992), cert. denied, 506 U.S. 1054 (1993); *Whitfield*, 853 F.2d at 1305.

proof'" also encompasses the "'burden of production,'" which determines who "bears the obligation to come forward with the evidence." *Ibid.* (citations omitted). Thus, in addition to tilting closely balanced cases, the burden of proof structures the presentation of evidence. Here, for example, the court of appeals faulted petitioners for evidentiary shortcomings—gaps that might have counted against respondents under a burden-shifting rule. *E.g.*, Pet. App. 20a (faulting petitioners for lack of "other evidence"); *id.* at 21a (describing how petitioners "offer[ed] no evidence" on a particular point); *id.* at 26a (similar).

Respondents minimize (Br. in Opp. 33) the burden of proof as "an arcane litigation-specific principle." But burdens of proof exist to shape litigation, are "rarely without consequence[,] and frequently may be dispositive to the outcome." *Concrete Pipe & Prods. of Cal., Inc.* v. *Construction Laborers Pension Trust*, 508 U.S. 602, 626 (1993) (quoting *Lavine* v. *Milne*, 424 U.S. 577, 585 (1976)). This Court often resolves questions involving burdens of proof. *E.g.*, *Medtronic, Inc.* v. *Mirowski Family Ventures, LLC*, 571 U.S. 191, 196 (2014); *Meacham* v. *Knolls Atomic Power Lab.*, 554 U.S. 84, 90 (2008); *Schaffer*, 546 U.S. at 55-56; *Director, Office of Workers' Comp. Programs* v. *Greenwich Collieries*, 512 U.S. 267, 270 (1994).

Respondents observe (Br. in Opp. 33) that this Court has thrice denied certiorari on the question presented. But one of those cases predated the division in the circuits. *RJR Pension Inv. Comm.* v. *Tatum*, 576 U.S. 1054 (2015) (No. 14-656). In the second, the petitioners acknowledged that the court of appeals had "fail[ed] to address loss causation." Pet. at 24, *ABB, Inc.* v. *Tussey*, 583 U.S. 874 (2017) (No. 17-265). And in the third, the

United States' response to the Court's invitation concluded that the question "might warrant this Court's review in an appropriate case" but that case's "unusual interlocutory posture" made it an unsuitable vehicle. U.S. Amicus Br. at 15, 19, *Putnam Invs., LLC* v. *Brotherston*, 587 U.S. 959 (2019) (No. 18-926).

3. This case is an appropriate vehicle for this Court's review. The question presented was squarely raised and decided below. Respondents urged the court of appeals to apply the default rule that plaintiffs bear the burden to prove the elements of their claims. Pet. App. 10a. Petitioners urged the court to adopt burden shifting based on asserted trust-law principles. *Ibid.* The court evaluated both contentions, weighed other circuits' conflicting views, and agreed with respondents. *Id.* at 10a-15a.

Respondents' only vehicle objection (Br. in Opp. 24-31) is that the question presented is not outcome-determinative because petitioners' claims should fail regardless. While that prediction may accurately assess the evidence, nothing in the decisions below foreordains that result as a matter of law. Following its usual practice as a Court of review, not first view, this Court could resolve the burden-of-proof question, and—if it disagrees with the Eleventh Circuit—remand for application of the correct standard in the first instance. See, *e.g.*, *Meacham*, 554 U.S. at 102.

Respondents' contention that they will prevail regardless also depends on a distinct, disputed question about the substantive standard for causation. Respondents assume that the test is whether "'no reasonable fiduciary' *could have* made the same choice under the circumstances." Br. in Opp. 26 (emphasis added; citation omitted). This Court, however, has never resolved the

appropriate causation standard in ERISA fiduciary-breach cases. In *Hughes* v. *Northwestern University*, 595 U.S. 170 (2022), the Court recognized the "due regard" owed to fiduciaries' "experience and expertise" in evaluating whether a *breach* occurred. *Id.* at 177. But, contrary to respondents' account (Br. in Opp. 26), *Hughes* did not resolve the standard for "establish[ing] that an investment option is objectively unreasonable for loss-causation purposes."

Respondents' "could have" formulation (Br. in Opp. 26-27, 29) is instead drawn from Judge Wilkinson's dissent in *Tatum* v. *RJR Pension Investment Committee*, 761 F.3d 346 (4th Cir. 2014), cert. denied, 576 U.S. 1054 (2015). But the *Tatum* majority rejected that formulation and held that an ERISA fiduciary must prove that "a prudent fiduciary *would have* made the same decision." *Id.* at 364. To be sure, the decision below signals agreement with Judge Wilkinson's dissent. Pet. App. 17a n.4. But that footnoted statement was made "[f]or what it is worth," *ibid.*, and could be revisited on remand. The substantive causation standard was hotly contested below but falls outside the question presented and is therefore not before this Court.

Respondents accordingly err in contending (Br. in Opp. 27-29) that the burden of proof is necessarily irrelevant. The lower courts appeared skeptical of petitioners' claims and might well reach the same result regardless. But both courts consistently viewed the evidence through the lens of *petitioners'* burden of proof.[4] In the

[4] *E.g.*, Pet. App. 20a ("The problem for [petitioners] is that they cannot make th[e required] showing here."); *id.* at 20a-21a (finding it will be "impossible for [petitioners] to show at trial that no prudent fiduciary in Home Depot's shoes would have chosen the financial advisors it did"); *id.* at 21a (they "offer no evidence"); *id.* at 25a

view of the United States, that analysis was correct. But were this Court to disagree, the lower courts could conceivably reach a different conclusion on remand. That suffices to make this case an appropriate vehicle for resolving the conflict.

**CONCLUSION**

The petition for a writ of certiorari should be granted.

Respectfully submitted.

D. JOHN SAUER
*Solicitor General*
CURTIS E. GANNON
*Deputy Solicitor General*
AARON Z. ROPER
*Assistant to the Solicitor General*

JONATHAN BERRY
*Solicitor of Labor*
WAYNE R. BERRY
*Associate Solicitor*
GARRETT N. TRAUB
SARAH M. KARCHUNAS
*Attorneys*
*Department of Labor*

DECEMBER 2025

(they "cannot show that a prudent fiduciary would not have also retained these funds"); *id.* at 26a (they "marshalled no evidence beyond a few years of underperformance"); *id.* at 77a (they "have not adduced sufficient evidence"); *id.* at 79a ("Put simply, [petitioners] have failed to adduce evidence[.]"); *id.* at 80a (they "failed to marshal any evidence"); *id.* at 83a (they "failed to establish evidence of loss causation"); *id.* at 99a (they "have failed to marshal evidence of loss causation"); *id.* at 100a (their "lack of material evidence * * * is ultimately fatal to [their] claim"); *id.* at 106a (they "marshal no material evidence"); *id.* at 112a (their "evidence" is "classic cherry-picking").